# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIJ SHARMA, ROBERT CARLIN, and TILAK SHARMA, | : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civ. No. 15-419-LPS |
| TRIZETTO CORPORATION, | : : | |
| Defendant. | : : | |

Michael P. Kelly, David A. White, and Daniel J. Brown, McCARTER & ENGLISH LLP, Wilmington, DE,

    Attorneys for Plaintiffs.


Jamie L. Edmonson and Daniel O'Brien, VENABLE LLP, Wilmington, DE,

Edward Boyle and Xochitl Strohbehn, VENABLE LLP, New York, NY,

    Attorneys for Defendant.



## MEMORANDUM OPINION



September 12, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.    BACKGROUND[1]

On May 26, 2015, Brij Sharma, Robert Carlin, and Tilak Sharma ("Plaintiffs") filed suit

against TriZetto Corporation ("TriZetto" or "Defendant") asserting various claims arising from

performance of a share purchase agreement ("SPA") related to Defendants' acquisition of

Plaintiffs' company ("Tela").  (D.I. 1)[2]  On July 16, 2015, TriZetto filed a Motion to Dismiss.

(D.I. 11)  The Court heard oral argument on January 26, 2016.  (*See* D.I. 21 ("Tr. 1"))  On March

29, 2016, the Court issued a memorandum opinion (D.I. 22 ("First Opinion" or "1st Op.")) and

order (D.I. 23) dismissing the claims and granting Plaintiffs leave to amend.  Plaintiffs filed their

First Amended Complaint ("FAC") on April 29, 2016.  (D.I. 24)  Defendants moved to dismiss

on May 23 (D.I. 28) and briefing was completed on June 21, pursuant to the Court's letter

briefing process.[3]  (D.I. 29, 30, 31)  The Court held argument via telephone conference on July

13.

## II.   LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires

the Court to accept as true all material allegations of the complaint.  *See Spruill v. Gillis*, 372

F.3d 218, 223 (3d Cir. 2004).  "The issue is not whether a plaintiff will ultimately prevail but

---

[1]This opinion incorporates by reference the factual background set forth in the Court's
First Opinion.  (*See* D.I. 22 at 2-5)

[2]The Complaint initially listed TZ Holdings L.P. as a defendant, but Plaintiffs have since
voluntarily dismissed this party.  (*See* D.I. 1, 13)

[3]*See* http://www.ded.uscourts.gov/judge/chief-judge-leonard-p-stark ("New Procedures"
applying to motions to amend or strike).

whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481–82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact)." *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiffs claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

2

## III.   DISCUSSION

Plaintiffs' FAC alleges breach of contract under Delaware law and seeks declaratory judgment pursuant to 28 U.S.C. § 2201.

### A.   Breach of Contract

To state a claim for breach of contract in Delaware, a Plaintiff must allege: "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff." *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003). Plaintiffs allege that TriZetto has breached the SPA in five separate ways: by (1) failing to include revenue of Gateway EDI, Quicklinks, "or any of the other Post-Closing Acquisitions which may have BPO income or revenue" in its calculation of Gross Revenue for the purpose of determining whether Plaintiffs were entitled to an earn-out payment under the SPA (D.I. 24 ¶ 80(a-b));  (2) failing to engage in good faith negotiations regarding which post-closing acquisitions should be included in the calculation of Gross Revenue (*id*. at ¶ 80(c)); (3) failing to provide Plaintiffs with reasonable information or detail concerning TriZetto's acquisition of Gateway EDI and Gateway EDI's income and revenue (*id*. at ¶ 80(d)); (4) by operating the BPO business to avoid owing Plaintiffs the earn-out payments, including by failing to maintain the business (*id*. at ¶ 80(e)); and (5) by failing to appoint or otherwise retain an accounting firm (*id*. at ¶ 80(f)).  Discussion of each alleged breach follows.

### 1.   Failing to include revenue from Gateway EDI, QuickLinks, or other post-closing acquisitions in its earn-out payment calculation

For the reasons set forth in its earlier opinion, the Court finds that Plaintiffs have not alleged facts that provide a basis for inferring that TriZetto breached a duty to include in its

calculation of Gross Revenue the revenue of Gateway EDI, QuickLinks, or any other post-closing

acquisition. (*See* D.I. 22) Plaintiffs have not corrected the deficiencies previously identified.

> ## 2. Failing to engage in good-faith negotiations regarding which acquisitions should be included in gross revenue

Plaintiffs allege that TriZetto failed to "engage in good faith negotiations regarding which

Post-Closing Acquisitions should be included in the calculation of Gross Revenue." (FAC at

¶ 80) The record before the Court includes dozens of pages of correspondence, spanning ten

months, which demonstrate that the parties engaged in discussions regarding the earn-out

calculation. (*See* D.I. 14-2, 14-3, 14-4, and 14-5; D.I. 17 at 3-7) In particular, the record shows

that TriZetto proposed a "path forward" for the negotiations, offering to provide information

related to acquisitions Plaintiff believed in good faith to fall within the BPO business line. (D.I.

14-5 at 14) Plaintiffs declined to follow this approach, instead insisting upon receiving detailed

information about "each acquisition company" and failing to outline a good faith basis for

believing that *any* acquired company operated within the BPO business line. (D.I. 14-5 at 18-21)

TriZetto responded by providing information related to Gateway EDI – the only company

Plaintiffs mentioned by name in their response – along with an explanation of TriZetto's position

that Gateway EDI was not part of TriZetto's BPO business. (D.I. 14-5 at 23-29) Plaintiffs then

filed this lawsuit, cutting off negotiations.

Plaintiffs have not alleged facts to support an inference that these discussions – which

undisputedly did occur – did not constitute good faith negotiations. Plaintiffs have not, for

example, explained why it was unreasonable of TriZetto to propose that its disclosures be limited

to financial information relating to companies Plaintiffs believed to be part of the BPO business.

Nor have Plaintiffs alleged any facts suggesting that TriZetto would have been unwilling to make

whatever disclosures were necessary to clarify which post-closing acquisitions contributed to the BPO businesses. The facts alleged do not support an inference that TriZetto failed to negotiate in good faith.

### 3. Failing to provide reasonable information concerning Gateway EDI

Plaintiffs allege that TriZetto failed to negotiate in good faith with respect to Gateway EDI because TriZetto "refuse[d] to provide any financial information related to Gateway EDI, which is essential to determine how much of Gateway EDI's revenues is to be included in the earn-out calculation." (FAC at ¶ 82) The FAC also includes a number of factual details that Plaintiffs believe suggest that at least some Gateway EDI revenue should be included in the calculation of Gross Revenue. (FAC ¶ 47-55)

As discussed above, TriZetto responded to Plaintiffs' bald allegation that Gateway EDI is part of TriZetto's BPO business by explaining why TriZetto did not agree. (D.I. 14-5 at 23-29) Plaintiffs did not respond to TriZetto's explanation, or suggest a means of resolving the parties' disagreement (*i.e.*, by indicating what types of data might allow Plaintiffs to evaluate TriZetto's argument, short of the same broad disclosures Plaintiffs initially sought and TriZetto had rejected). (D.I. 14-5 at 18-21) Instead, Plaintiffs filed this lawsuit.

The SPA does not require TriZetto to make specific disclosures about its earn-out calculation. There is no non-conclusory, plausible allegation that TriZetto would have spurned the opportunity to negotiate about the proper scope of disclosure, nor that TriZetto ultimately would have refused to disclose information Plaintiffs truly needed. Instead, Plaintiffs essentially ask the Court to find that TriZetto failed to engage in good faith negotiations simply because it

did not, upon first request, turn over all of the information Plaintiffs requested.  This fails to state a claim.

Plaintiffs' allegations regarding Gateway EDI do not change this analysis.  Even assuming these facts do support Plaintiff's claim that Gateway EDI revenue is at least partly attributable to BPO business, they do not make plausible Plaintiffs' claim that TriZetto failed to *negotiate in good faith*.

For these reasons, Plaintiffs' allegations do not support an inference that TriZetto breached its duty to negotiate in good faith regarding whether to include Gateway EDI revenue in its tabulation of Gross Revenue of the BPO business.

### 4.    Operating the BPO business to avoid  payments

The SPA required TriZetto to "operate the [BPO business] in good faith consistent with its fiduciary duties under applicable Law and . . . not, directly or indirectly, take any actions in bad faith that would have the purpose of avoiding or reducing the earn-out payment."  (D.I. 14-1 at 9)  Plaintiffs allege that TriZetto breached this duty by replacing the Tela sales team with members of TriZetto's internal sales team.  According to Plaintiffs, TriZetto's use of its own inexperienced sales team is the reason BPO revenues "badly miss[ed] not only the Earn-Out Revenue Minimum but also TriZetto's own pre-acquisition BPO business revenue projections by many millions of dollars."  (FAC at at ¶¶ 34-39, 83)  Plaintiffs also allege that TriZetto neglected the BPO business, which resulted in poor performance and a client lawsuit.  (*Id*. at 40-41)

Even taken as true, these allegations do not support an inference that TriZetto operated the business with the bad faith intention of avoiding the earn-out payment.  TriZetto's failure to meet its own projected financial results is certainly not enough: TriZetto's executives may have

projected incorrectly, or may have simply decided to change their approach to the BPO Business (as they were entitled to do under the SPA).[4] But this is not tantamount to a plausible, non-conclusory allegation of a bad faith decision to avoid the earn-out payment; it may equally be a matter of (perhaps poor) business judgment. "Where a complaint pleads facts that are merely *consistent with* a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (emphasis added). Because Plaintiffs have not alleged facts that suggest TriZetto made business decisions *with the goal of avoiding* the earn-out payment, Plaintiffs' allegations do not support an inference that TriZetto breached its duty to operate the BPO business in good faith.

### 5.     Failing to appoint or retain an accounting firm

As the Court explained in the First Opinion, the language of the SPA does not require TriZetto or Plaintiffs to appoint an accounting firm to resolve the parties' dispute about whether revenue from post-closing acquisitions should have been included in the earn-out calculation. (D.I. 22 at 9-10)  Plaintiffs now argue that the parties' course of conduct – namely, their discussions about appointing an accounting firm – modified the SPA.

In Delaware, the parties to a contract may modify its written terms by engaging in a course of conduct that "leave[s] no doubt as to [their] intention" to do so. *Haft v. Dart Grp. Corp.*, 1994 WL 828326, at *12 (D. Del. Aug. 17, 1994) (internal quotation marks omitted).

---

[4]The SPA gives TriZetto "sole discretion with regard to all matters relating to the operation of [the acquired business]." (D.I. 14-1 at 9)  A party to a contract, such as TriZetto, does not act in bad faith by relying on contract provisions for which that party bargained, even where doing so limits benefits to another party. *See Winshall v. Viacom Int'l, Inc.*, 55 A.3d 629, 638 (Del. Ch. 2011), *aff'd*, 76 A.3d 808 (Del. 2013).

Plaintiffs argue that the parties' negotiations regarding appointment of an accounting firm indicate that both intended to allow an accounting firm to resolve disputes about whether revenue from post-closing acquisitions should have been included in the earn-out calculation.  Having reviewed the parties' correspondence regarding the possibility of retaining an accounting firm, the Court finds that their discussion does not make clear an intention to have an accounting firm determine *which post-closing acquisitions engage in BPO Business*.  Instead, it reflects the SPA's requirement that the parties retain an accounting firm to resolve disputes related the accounting issues involved in calculating gross revenue.  (D.I. 14-5)  Thus, the Court finds that Plaintiffs' allegations do not support an inference that TriZetto had a duty to appoint an accounting firm.

### B.    Declaratory Judgment

Plaintiffs seek a declaratory judgment regarding (a) "what sources of revenue or income are to be included in the term, 'Gross Revenue', as that term is used in the SPA," as well as (b) whether the parties agreed to modify the SPA through their course of conduct.  (FAC at ¶ 99)  The Court resolved the first issue in its earlier opinion.  With respect to the second issue, as explained above, Plaintiffs have not alleged facts sufficient to state a course of conduct modification of the contract at issue in this case.  Accordingly, Plaintiffs have failed to state a claim on which relief may be granted.

## IV.    CONCLUSION

The Court finds that Plaintiffs have failed to state a claim upon which relief can be granted.  Therefore, their claims must be dismissed pursuant to F.R.C.P. 12(b)(6).  An appropriate Order follows.